```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| MARCH VII INVESTMENT LIMITED PARTNERSHIP and MARCH VIII INVESTMENT LIMITED PARTNERSHIP<br>    Plaintiffs<br><br>    v.<br><br>ANNE E. KRAMER,<br>    Defendant | <br><br><br><br><br><br>C.A. No. 15-11917-MLW |

MEMORANDUM AND ORDER

WOLF, D.J.                                               September 14, 2016

I.    SUMMARY

Plaintiffs are two limited partnerships established under Massachusetts law, March VII Investment Limited Partnership and March VIII Investment Limited Partnership (the "March Entities"). The March Entities are the limited partners in two Maryland limited partnerships that own two senior living facilities in Maryland, the Ridgely/Hampstead Limited Partnership and the Ridgely Black Rock Limited Partnership (the "Partnerships"). The March Entities have sued defendant Anne Kramer, the general partner of the Partnerships, alleging that Kramer breached the agreements governing the Partnerships (the "Partnership Agreements") and her fiduciary duties as general partner.

Kramer has moved to transfer this case to the United States Court for the District of Maryland (the "Transfer Motion"). Plaintiffs oppose transfer. For the reasons explained in the

1

Memorandum, the Transfer Motion is being allowed. In essence, the presumption in favor of the plaintiffs' choice of forum is weak in this case. It is outweighed by the convenience of the parties, the convenience of the witnesses, and the interests of justice, which all favor litigating and trying this action in the District of Maryland.

II. PROCEDURAL HISTORY

On June 19, 2015, Kramer filed a motion to dismiss, arguing that this court lacks personal jurisdiction over Kramer or, in the alternative, the case should be dismissed under the doctrine of forum non conviens. The March Entities opposed that motion. The court held a hearing on the motion and raised the question of whether the case should be transferred to the District of Maryland pursuant to 28 U.S.C. §1404. The court subsequently issued an order denying the motion to dismiss, ordering the parties to confer and report whether they agreed to transfer the case to the District of Maryland, and establishing a schedule for Kramer to file any motion to transfer if the parties did not agree. Kramer filed the Transfer Motion with a supporting memorandum (the "Transfer Memorandum") and three affidavits. The March Entities filed an opposition ("Transfer Opp.") and supporting declaration.

III. APPLICABLE STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). "The burden of proof rests with the party seeking transfer." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).

Ordinarily, "there is a 'strong presumption in favor of the plaintiff's choice of forum.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 13 (1st Cir. 2009) (quoting Coady, 223 F.3d at 11). However, "[w]here the operative facts of the case have no material connection with [the] district, plaintiff's choice of forum carries less weight." U.S. ex rel. Ondis v. City of Woonsocket, Rhode Island, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (quoting Goodman v. Schmalz, 80 F.R.D. 296, 302 (E.D.N.Y. 1978)). More specifically:

> [T]he plaintiff's venue choice is to be given less weight if he or she selects a district court with no obvious connection to the case or the plaintiff is a nonresident of the chosen forum or neither element points to that court. Although not universally followed by other courts, this approach is one of sound judicial administration and reflects good common sense.

Id. (quoting 15 Wright, Miller & Cooper, Federal Practice and Procedure §3848 at 134-39 (2007)).

A district court considering a motion for transfer "must evaluate both the convenience of the parties and various public-interest considerations." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 (2013). In weighing

3

convenience, the court must consider both the "convenience of the parties and the witnesses." 28 U.S.C. §1404(a). "Judges in this District agree that convenience of the witnesses is an extremely important, if not the most important, factor to be analyzed in determining whether to change a litigation's venue." Gemini Inv'rs Inc. v. Ameripark, Inc., 542 F. Supp. 2d 119, 126 (D. Mass. 2008) (citing Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 3 (D. Mass. 1987)).

> To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of the[ir] testimony; and (3) show[] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.

Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1169 (10th Cir. 2010) (internal quotations omitted). The court must also consider "relative ease of access to sources of proof; availability of compulsory process . . .; possibility of view of premises . . .; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Atl. Marine, 134 S. Ct. at 581 n.6 (internal quotation mark omitted).

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc., 626 F.3d 973, 978 (7th Cir. 2010). Factors that courts consider in determining whether transfer is in

4

the interest of justice include: (1) the time it will take to reach trial in each district; (2) "each court's relative familiarity with the relevant law;" (3) "the respective desirability of resolving controversies in each locale;" and (4) "the relationship of each community to the controversy." Id.; see also Brant Point, 671 F. Supp. at 5 ("[T]ransfer . . . would promote the interests of justice by allowing the North Carolina zoning procedures at issue in this case to be construed by a federal court sitting in that state, rather than by a court unfamiliar with North Carolina law.").

IV. FACTS

The March Entities contend that Kramer has breached the Partnership Agreements in a variety of ways since 2000, including by: (1) failing to pay a required fee; (2) failing to pay the March Entities their annual share of the Partnerships' profits; (3) paying herself unauthorized compensation; (4) changing the Partnerships' accountants without the March Entities' approval; and (5) attempting to admit another entity, the Hampstead Group, LLC, as a second general partner without the March Entities' approval. The Complaint makes four claims for relief flowing from the alleged breaches: (1) declaratory judgment that Kramer breached the Partnership Agreements, entitling the March Entities to remove her as general partner; (2) breach of the Partnership

Agreements; (3) breach of fiduciary duty; and (4) unjust enrichment.

The following facts are drawn from the complaint unless otherwise indicated. Kramer is a resident of Maryland. The Partnerships were established in the 1980s to develop and operate two rental communities in Maryland for low-income seniors (the "Properties"). The Partnership Agreements provide that they are governed by Maryland law.

At the time the Partnership Agreements were negotiated, the March Entities' operated from Boston, Massachusetts. See Madrigal Affidavit in Opposition to Motion to Dismiss ¶3. In 1992, the March Entities moved their offices out of Massachusetts. See id. In 2005, the March Entities moved all files related to the Partnerships to California, where the March Entities' offices are now located. See id. ¶2. The March Entities are now controlled by their general partner—another limited partnership based in California, NPI Capital Associates, L.P ("NPI"). See Orenstein Declaration in Opposition to Defendant's Motion to Transfer ("Orenstein Dec.") ¶5.

The parties have each submitted declarations concerning the Transfer Motion. Kramer submitted three: (1) the Declaration of Anne Kramer; (2) the Declaration of Mario Nimock; and (3) the Declaration of Richard Lasley. Kramer lives in Parkton, Maryland. See Lasley Dec. ¶8. She handles all of her "business activities

6

personally." Id. ¶8; see also Kramer ¶2.  She is 90 years-old and requires "round-the-clock helpers" to assist her.  See Lasley Dec. ¶8; Kramer ¶2.  Kramer states that traveling to Massachusetts would be "a great burden . . . personally and physically, given [her] age and limitations."  Kramer Dec. ¶2.  If Kramer must travel to Massachusetts for depositions or trial, the helpers will have to travel with her, and Kramer would need to find and pay for suitable accommodations for them.  See Lasley Dec. ¶8; Kramer ¶2.

The Lasley Declaration identifies eleven Maryland witnesses, including Lasley himself, that Kramer contends are "necessary to [her] defense in this case . . . ."  Lasley Dec. ¶7.  Lasley lives in Maryland and is Kramer's "estate planning counsel and personal general counsel" and has personal knowledge about various potentially relevant matters, including: the Partnership Agreements; Lasley's conversations with agents of NPI concerning the "payment of service fees and other sums"; and the addition of the Hampstead Group, LLC as a general partner in the Partnerships. See id. ¶¶5-6.  In particular, Lasley states that he spoke with NPI representatives about their demands for payment and was never "provided with satisfactory information for me to recommend payments under the subject partnership agreements."  Id. ¶9.

Lasley also asserts that Richard Lehman is an attorney who has represented Kramer for many years and is located in Maryland. He can testify concerning communications with the March Entities

7

or their agents "concerning the admission of Hampstead Group, LLC as an additional general partner." Id. ¶7. Lasley adds, without elaboration, that Lehman can also testify about his firms' records relating to the Partnerships, the March Entities' claims, and Kramer's defenses. See id.

In addition, Lasely states that two current and two former accountants for the Partnerships, who are in Maryland, can testify concerning the Partnerships' finances, the creation of the Partnerships' audit reports, and details of the fees and distributions that the March Entities claim were paid or not paid. See id. Bruce Campbell, an officer with the Partnerships' property manager in Maryland, Wallace H. Campbel & Co., Inc., can testify about the management duties and payment of service fees, as well as, conversations he has had with agents of NPI. See id. Linda Wood, the onsite property manager for the Properties, and Deborah Carlson, the management supervisor, can testify about the regular operations and management of the properties, rent increases sought for the properties, revenues and disbursements from the properties, and contacts with the USDA. See id. Sandra S. Hunter, the local USDA Rural Development representative in Maryland, has knowledge of the "operations and management of the properties, decisions on requests for rent increases, audited financial statements relating to the properties" and USDA contacts with Kramer and property management personnel. Id. Finally, John W.

Beckley is a Maryland attorney who can testify about the "role of the Hampstead Group with regard to the [Partnerships]." See id.

The Nimock Affidavit, submitted by Kramer, describes and provides public documents detailing the creation, administrative dissolution, and reinstatement of the March Entities. Attached to it are documents from the Massachusetts Secretary of State's Office indicating that the March Entities made no filings with the Secretary from the fall of 1992 through May 20, 2015. See id. ¶¶8, 20. The March Entities were administratively dissolved on June 13, 2013. See id. ¶¶9, 21. They were both reinstated on May 22, 2015 after filing Annual Reports for the years 2008 through 2015. See id. ¶¶11-12, 23-24. The March Entities filed this suit four days after they were reinstated. See id. ¶25.

The March Entities submit the Orenstein Declaration in opposition to the Transfer Motion. Orenstein identifies three categories of relevant witnesses who reside in or near Massachusetts. Jack Manning is the individual with the greatest ultimate financial stake in the March Entities. See Orenstein Dec. ¶8. Manning holds a 67% limited partnership interest in an entity called JP Two LP, which holds a 99% limited partnership interest in the March Entities. See id. He has the largest financial stake in the March Entities and, according to the March Entities, is the most qualified individual to testify about the materiality of Kramer's alleged breaches of the Partnership

9

Agreements. See id. Manning lives and works in Massachusetts, and is not an agent of the March Entities. See id.

The second category of witnesses is comprised of the former principals of the March Entities' original general partner. See id. ¶9. Jerome Heller and Peter O'Connor are Massachusetts residents and have "first-hand knowledge of the negotiation of the [Partnership Agreements], the intent of the parties at the time they entered into [them], and the conduct of the parties after entering into the [Partnership Agreements]." Id.

The final category of plaintiffs' witnesses consists of four individuals who were original limited partners in one or the other of the March Entities. See id. ¶10. They can testify about "the materiality of Kramers' breaches of contract based on [their] expectations at the time [they] made [the] investment as well as [their] purchase of limited partnership interests pursuant to a securities offering in connection with the [Partnerships]." Id. Three of the individuals are residents of Massachusetts and one is a resident of New Hampshire who lives within 100 miles of Boston. See id.

V. DISCUSSION

Kramer seeks to transfer this case to the District of Maryland. She argues that: (1) the convenience of the parties favors transfer because Kramer is elderly and requires full-time care; (2) the most important witnesses all reside in Maryland; and

10

(3) Maryland has the greatest interest in this action because Maryland law governs the dispute, and the dispute concerns Maryland limited partnerships operating senior housing in Maryland. The March Entities respond that Kramer has not overcome the presumption in favor of their choice of venue. They argue further that, as Massachusetts entities, they have an interest in litigating in their home forum. They also identify several witnesses who reside in or near Massachusetts.

The presumption in favor of plaintiffs' choice of venue is relatively weak in this case because the March Entities now have "no material connection with this district." Ondis, 480 F. Supp. 2d at 436. The March Entities are no longer based in Massachusetts, despite remaining Massachusetts legal entities. The presumption is not strengthened by the March Entities' choice to bring this action in their home forum. In the normal case, the choice of home forum "more likely represents considerations of convenience rather than vexation or harassment to the defendant." See Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000). Id. The March Entities' long absence from Massachusetts undermines the claim that Massachusetts is much more convenient for them.

In the usual case, the convenience of the parties is neutral because transfer merely shifts the burden from one party to another. See Brant Point, 671 F. Supp. at 3. However, in this

11

case, the representatives of the March Entities will have to travel from California either to Massachusetts or Maryland.[1] Litigating in Massachusetts, however, would be particularly burdensome to Kramer. She lives in Maryland, is 90 years old, and requires full-time care-takers, with whom she would have to travel.

Often the most important factor in deciding whether transfer is justified is the convenience of witnesses and the availability of live testimony. Here, the most important witnesses identified by either party appear to be the Partnerships' accountants. The accountants can explain the complex financial documents at the heart of the March Entities' claims. See Transfer Opp. at 11-13 (stating they intend to rely at trial on audit reports produced by the Partnerships' accountants). "It is well settled that the trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured [through transfer]. This is especially so when the 'qualitative value' of the witnesses' testimony is high." Brant Point, 671 F. Supp. at 4-5 (internal citations and quotation marks omitted); see also Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125-26 (D. Mass. 2000) ("Section 1404(a) of Title 28 also requires the court to

---

[1] The March Entities argue that Manning, the individual with the greatest financial interest in the case, is a Massachusetts resident and important witness. However, Manning is not a party. Therefore, his location is not relevant to the convenience of the parties factor.

consider the convenience of witnesses, with a preference of live testimony over testimony by deposition."). The accountants are located in Maryland and can, if necessary, be compelled to testify in the District of Maryland. See F.R. Civ. P. 45(c)(1). They cannot be compelled to testify in Massachusetts. In any event, Maryland is more convenient for them.

It is not evident that the testimony of any of the March Entities' proposed witnesses would be admissible. They argue that their proposed witnesses can testify concerning the materiality of the alleged breaches and the intent of the contracting parties. However, "[t]he determination of the materiality of a breach must be based largely on a standard of objective reasonableness, rather than purely subjective belief." 23 Williston on Contracts §63:3 (4th ed. 2016). The March Entities do not explain how testimony from any of these witnesses would be more than subjective belief.

In addition, Maryland follows the rule that extrinsic evidence is only admissible to interpret a contract when the words of the contract are ambiguous. See Calomiris v. Woods, 353 Md. 425, 437 (1999); Huggins v. Huggins & Harrison, Inc., 220 Md. App. 405, 418 (2014). The March Entities concede in their Opposition that any relevance is conditioned on the court ruling that the Agreements are ambiguous. However, they do not argue that the Partnerships are ambiguous. Rather, they assert that "extrinsic

evidence is unnecessary" to interpret the Partnership Agreements. Transfer Opp. at 7.

In addition, the March Entities have not identified any admissible evidence that Manning may have. Nor have they argued that Manning would be unwilling or unable to travel to Maryland for trial if he were a witness. See Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d 217, 237 (D. Mass. 2011); E.E.O.C. v. Texas Roadhouse, Inc., No. 1:11-CV-11732-DJC, 2012 WL 5894910, at 2 (D. Mass. Nov. 9, 2012); F.A.I. Elecs. Corp. v. Chambers, 944 F. Supp. 77, 80-81 (D. Mass. 1996).

Finally, the interests of justice weigh heavily in favor of transfer to Maryland. The case is still in its early stages, so transfer would not delay the time to get to trial. If a jury view of the properties would be valuable, it could occur if the trial were in Maryland, but not if it were in Massachusetts. "[T]ransfer . . . would promote the interests of justice by allowing the [Maryland law] at issue in this case to be construed by a federal court sitting in that state, rather than by a court unfamiliar with [Maryland] law." Brant Point, 671 F. Supp. at 5. It is most appropriate that these issues be decided by a Maryland court, subject to appeals and authoritative decisions in the appellate courts familiar with Maryland law. Finally, Maryland has a stronger relationship with the dispute. This case concerns two Maryland Partnerships, application of Maryland law, and operation

of entities of significant public importance (public housing) in Maryland. Accordingly, the court concludes that transfer of this case to the District of Maryland is justified.

VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Plaintiff's Motion to Transfer Venue (Docket No. 28) is ALLOWED.

2. This case shall be TRANSFERRED to the United States District Court for the District of Maryland.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE